## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**STANLEY STIRGUS**                                   **CIVIL ACTION**

**VERSUS**                                            **NO. 10-0374**

**HOWARD PRINCE, WARDEN**                             **SECTION "S" (6)**

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).  Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

## I.  PROCEDURAL HISTORY

On October 11, 2001, petitioner, Stanley Stirgus, presently incarcerated in Hunt Correctional Center in St. Gabriel, Louisiana, was charged in the Twenty-Fourth Judicial

District Court for the Parish of Jefferson by grand jury indictment with second degree murder.[1]  Thereafter, pursuant to a plea agreement, the State amended the indictment to charge petitioner with attempted armed robbery.  Petitioner then pled guilty to the amended charge.

On March 7, 2002, the State filed a motion to vacate petitioner's guilty plea due to petitioner's alleged failure to testify truthfully pursuant to the plea agreement.[2]  On April 12, 2002, the state district court granted the State's motion to vacate petitioner's guilty plea.[3]  The State subsequently re-amended the indictment to once again charge petitioner with second degree murder.

On December 11, 2003, following trial by jury, petitioner was found guilty of second degree murder.[4]  The state trial court, however, based upon the admission at trial of petitioner's prior juvenile conviction for armed robbery, granted petitioner's motion for a new trial.  The state appellate court, however, on February 20, 2004, reversed the trial court's ruling granting petitioner a new trial.  *State v. Stirgus*, No. 04-KH-141 (La. App. 5 Cir. 2004)

---

[1]A copy of the pertinent indictment is contained in the State rec., vol. 8 of 14, p. 1.

[2]A copy of the State's motion to vacate is contained in the State rec., vol. 8 of 14, p. 62.

[3]A copy of the district court's April 12, 2002 Order granting the State's moiton to vacate is contained in the State rec., vol. 8 of 14, pp. 64-69.

[4]A copy of the jury's verdict is contained in the State rec., vol. 8 of 14, p. 188.

(unpublished opinion).[5]   The Louisiana Supreme Court, on October 1, 2004 , denied petitioner's writ application.  *State v. Stirgus* , 885 So.2d 511 (La. 2004).  Following the Louisiana Supreme Court's decision, the trial court, on November 17, 2004, sentenced petitioner in connection with his second degree murder conviction to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[6]

The Louisiana Fifth Circuit Court of Appeal, on November 29, 2005, affirmed petitioner's conviction and sentence.  *State v. Stirgus*, 917 So.2d 559 (La. App. 5 Cir.  2005). On October 27, 2006, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his conviction and sentence final.  *State v. Stirgus*, 939 So.2d 1275 (La. 2006).

On October 23, 2007, an application for post-conviction relief was filed with the state district court on petitioner's behalf.[7]  Petitioner's effort in this regard culminated on October 2, 2009, when the Louisiana Supreme Court denied his application for reconsideration.  *State v. Stirgus*, 18 So.3d 104 (La. 2009).

On December 27, 2009, petitioner filed the instant petition for writ of habeas corpus

---

[5]A copy of the Fifth Circuit's unpublished opinion is contained in the State rec., vol. 12 of 14, tab 15.

[6]*See* State rec., vol. 8 of 14, p. 238.

[7]A copy of petitioner's post-conviction application is contained in the State rec., vol. 6 of 15, tab 5.

raising the following claims:  1) He was denied due process when prejudicial evidence of a prior juvenile conviction for armed robbery was presented to the jury; 2) he was denied due process when the district attorney was erroneously allowed to re-amend the indictment; and, 3) he was denied effective assistance of counsel.  The State acknowledges that petitioner has exhausted the above claims as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982), and that the instant action is timely.  (Rec. doc. 11, p. 4). Accordingly, this court shall review the pertinent facts and standard of review, then proceed to address the merits of petitioner's claims.

## II.  FACTS[8]

In the early morning hours of September 14, 2001 at 324 Ruby Street, Apartment B, Ralph Sterling, also known as "Big Man," died as a result of a gunshot wound to his chest. At the time of this homicide, Brandon Harris, Sarah Harris (Brandon's sister), Shirley Johnson, Shirley's two nephews and her niece were in the apartment.

At trial, Shirley Johnson testified that on the morning of the incident, her nephew heard knocking, so she went to see who was at the door.  When she got downstairs, the three perpetrators, whom she recognized as petitioner, Peter Lewis and Clayton Weaver, were already in the apartment. Shirley knew petitioner prior to the incident and had talked to him

---

[8]The facts are taken from the Louisiana Fifth Circuit Court of Appeal's opinion, *State v. Stirgus*, 917 So.2d 559 (La. App. 5 Cir. 2005).

before.  She also knew Lewis from living across the street.  Lewis and Weaver were armed with guns, and Weaver grabbed her leg while Lewis put a gun to her head as she screamed. Petitioner, who was unarmed, went upstairs in a room with Shirley, who was sixteen at the time, and her nephews and niece.  Petitioner gave her a towel to wipe her face and said not to worry, because things would be okay.  Weaver and Lewis went into the room where Sarah and Big Man were sleeping.  Subsequently, Shirley heard six or seven gunshots.

When the police arrived at the scene, Shirley told a detective that petitioner was one of the perpetrators.  She provided petitioner's first name and a description of the other two perpetrators. Thereafter, on this same day, Shirley identified petitioner in a photographic lineup.  On the following day, she identified Weaver and Lewis from photographic lineups.

Brandon testified that on the morning of the incident, he was asleep on the sofa at the apartment.  He awoke and heard Shirley screaming for Sarah and Big Man.  One of the perpetrators walked by the sofa and tried to hide his face with his right arm.  After he heard Sarah screaming upstairs and the victim say "I'm going to give it to you," Brandon ran to his sister's house down the street to call the police.  From his sister's house, he heard gunshots.

Brandon only saw one perpetrator.  Although he did not see his face, he was about two to three feet away from him, and he observed a tattoo of letters on his right arm.  Brandon was able to describe the tattoo to Detective Clogher, and he later identified the tattoo in a photograph as the same one he saw on the arm of the perpetrator that night.  In addition, he

knew the person with the tattoo from the neighborhood, having seen him a few times before, and he identified petitioner as that person.  At trial, Brandon recognized the photographic lineup from which he identified petitioner on September 14, 2001, and stated that he was sure that petitioner was the person he saw in the apartment that night.

Petitioner's father, a New Orleans Police Officer, brought petitioner into the Detective Bureau on September 16, 2001.  At the time, petitioner was sixteen years old. Petitioner gave five taped statements on this day, which were transcribed. These statements were played for the jury at trial.

Defendant's first statement was exculpatory and provided information as to where he purportedly was at the time of the incident.  In this statement, petitioner claimed he did not know the victim.

In his second statement, petitioner admitted that he was in the apartment when the victim was shot, but that he remained downstairs.  He stated that he thought they were just going to visit the victim.  He admitted that he knew that the other two were armed with what looked like a machinegun and a nine millimeter, but he stated that he did not have a gun. He heard more than two gunshots and left.

In petitioner's third statement, he noted that he had just been shown a lineup and he identified "Dough Boy", i.e., Peter Lewis, as the person who was in the apartment armed with a machinegun.  He then stated that he was shown a second lineup in which he identified

someone he called "Red", i.e., Clayton Weaver, who was in the apartment armed with a nine millimeter.

Petitioner admitted in his fourth statement that he went upstairs, but he was in another room with Shirley and the children. He stated that he ran after he heard the gunshots.

In petitioner's fifth statement, he claimed that a few days before the incident, Dough Boy was talking about a "lick" (strong arm or robbery) of a man with five or six keys (kilos of dope) and twenty two thousand dollars. Dough Boy stated that he needed help and he heard Big Man's name mentioned. Petitioner was later told that if he watched someone, he would get four quarters (dope). Petitioner admitted that he knew they were armed that night and he was told to go in the room to watch Shirley and the children. He realized what was going on once they threw open the door, heard a couple of things and then heard gunshots. He claimed that he did not realize there was going to be a murder, but he knew there would be a strong arm for dope and/or money.

At trial, petitioner testified that he was not at the apartment at the time of the incident. He claimed that the officers forced him to make these statements by grabbing his testicles and hitting him on the head with a phonebook. Detective Meunier denied these allegations.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).

*Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

8

28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV.  ANALYSIS

### Claim 1):  Denied Due Process When Prejudicial Other Crime Evidence Was Presented to Jury

Petitioner argues that he was denied due process when "the jury was presented with an affidavit containing inadmissible and highly prejudicial information abut his juvenile arrest and adjudication history which included information about a conviction for armed robbery as a juvenile."  (Rec. doc. 12-1, p. 2).

In addressing the instant claim, the Louisiana Fifth Circuit first reiterated petitioner's claim that "he was prejudiced by the admission of his arrest warrant, which contained an attachment listing his record of a previous conviction for armed robbery while he was a juvenile."  *State v. Stirgus*, No. 04-KH-141, p. 1.  Thereafter, the state appellate court noted that petitioner, in support of his claim, submitted a portion of the transcript which "indicates that Detective Donald Meunier identified the defendant's arrest warrant, Exhibit 82, and the State offered and introduced this exhibit into evidence and defense counsel stated no objection."  *Id*.

Based upon the above, the Louisiana Fifth Circuit concluded:

> The failure of a defendant to contemporaneously object to the admission of other crimes evidence as required by La. C.C.P. art. 841 is deemed a waiver of that objection and is not reviewable by an appellate court.

*State v. Taylor*, 93-2201 (Ka, 2.28/96), 669 So.2d 364, 368, *cert. denied*, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996).

*Id.*

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court,

the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  *Amos*, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Glover*, 128 F.3d at 902.  A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.  *Id.*

In the instant situation, the Louisiana Fifth Circuit issued the last reasoned decision, denying petitioner's claim, that he was prejudiced by the admission of his arrest warrant which contained an attachment listing his record of a previous conviction for armed robbery while he was a juvenile, based on the procedural ground that petitioner failed to lodge a contemporaneous objection and citing La.C.Cr.P. art 841 in support of its finding.  *Stirgus*, No. 04-KH-141, p. 1.  Alternatively, the Louisiana Fifth Circuit determined that petitioner's claim for relief based upon the admission of his arrest warrant and attachment listing a prior juvenile conviction was without merit.  *Stirgus*, No. 04-KH-141,  p. 2.  However, the United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

It is well-settled that Louisiana's contemporaneous objection rule is an independent

and adequate state procedural ground.  *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir.2002)

(citing *Wainwright v. Sykes*, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

When the state court relies on this procedural default in dismissing the claim, as it did here,

the claim is immune from federal review.  *Id.*

A federal habeas petitioner, however, may be excepted from the procedural default

rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate

that the federal court's failure to review the defaulted claim will result in a "fundamental

miscarriage of justice."  *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*,

61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129, 102

S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some

objective factor external to the defense impeded his efforts to comply with the state's

procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397

(1986).  The mere fact that petitioner failed to recognize the factual or legal basis for a claim,

or failed to raise the claim despite recognizing it, does not constitute cause for a procedural

default.  *Id.* at 486.

In this case, petitioner provides no basis to support a finding that he had good cause

for failing to raise an objection to the admission of his arrest warrant which contained an

attachment listing his record of a prior juvenile armed robbery conviction.  "The failure to

12

show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue*, 131 F.3d 466, 497 (5th Cir.1997) (citing *Engle*, 456 U.S. at 134 n. 43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir.1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir.1977)).

The instant claim is therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt. *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tx.1997) (footnote omitted); *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F .3d at 903.

Petitioner does not present and the record does not contain evidence that suggests his actual innocence.  Accordingly, petitioner has failed to overcome the procedural bar to his claim that the trial court erred in admitting his arrest warrant which contained an attachment listing his record of a previous conviction for armed robbery while he was a juvenile.

### Claim 2) Denied Due Process When District Attorney Was Erroneously Allowed to Re-Amend Indictment

As noted above, petitioner, on October 11, 2001, was indicted by a Jefferson Parish grand jury on the charge of second degree murder.  Thereafter, pursuant to a plea agreement, the State amended the indictment to charge petitioner with attempted armed robbery. Petitioner then pled guilty to the amended charge.

On March 7, 2002, the State filed a motion to vacate petitioner's guilty plea due to petitioner's alleged failure to testify truthfully pursuant to the plea agreement.[9]  On April 12, 2002, the state district court granted the State's motion to vacate petitioner's guilty plea.[10] The State subsequently re-amended the indictment to once again charge petitioner with

---

[9]A copy of the State's motion to vacate is contained in the State rec., vol. 8 of 14, p. 62.

[10]A copy of the district court's April 12, 2002 Order granting the State's motion to vacate is contained in the State rec., vol. 8 of 14, pp. 64-69.

14

second degree murder.  It is this alleged unlawful re-amendment of the indictment which

provides the basis for the instant claim.

The State argues that petitioner's claim is procedurally barred.  In connection with

petitioner's post-conviction application, the state district court denied petitioner's claim on

procedural grounds, specifically, La.C.Cr.P. art. 930.4(C), due to petitioner's failure to raise

his claim on appeal.[11]

It is well-established that Louisiana Code of Criminal Procedure Article 930.4(C) "is

a state procedural rule independent of the merits of the federal claim."  *Rose v. Prince*, 2009

WL 2922801, *4 (E.D. La. 2009) (Vance, J.) (quotation omitted).  Petitioner, however

challenges the adequacy of the state district court's procedural bar of his claim in light of the

court's failure, as required under LSA-C.Cr.P. art. 930.4(F), to order him to provide an

explanation for his failure to raise his claim on appeal.[12]

Petitioner's challenge to the adequacy of Article 930.4(C) based upon the state court's

failure to comply with the provisions of Article 930.4(F) is not unique.  A similar argument

---

[11]A copy of the state district court's opinion denying petitioner post-conviction relief is
contained in the State rec., vol. 6 of 14, tab 9.
    La.C.Cr.P. art. 930.4(C) provides: "If the application alleges a claim which the petitioner
raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."

[12]La.C.Cr.P. art. 930.4(F) provides, in pertinent part:

    If the court considers dismissing an application for failure . . . to urge the
    claim on appeal...the court shall order the petitioner to state reasons for his failure.

15

was raised by the habeas petitioner in *Rodriquez v. Cain*, 2007 WL 4522497 (E.D. La. 2007) (Berrigan, J.). Specifically, Rodriquez challenged the adequacy of La.C.Cr.P. art. 930.4(C) based upon the fact "that the trial court failed to order him to explain why he had not submitted his claims in earlier proceedings as required by art. 930.4(F) . . . ." *Id.* at *18. The court, however, rejected Rodriquez's challenge based upon the fact that petitioner utilized the Uniform Application for Post Conviction Relief form in seeking post-conviction relief and the form provided him with an opportunity to explain why he failed to raise a particular claim for relief in an earlier proceeding. The court reasoned:

> "Proper use of the Uniform Application . . . satisfies the requirements of Art. 930.4(F) without the need for further filings, formal proceedings, or a hearing. Therefore, Petitioner's argument that procedural default is inapplicable is a non-starter because the trial judge is deemed to have complied with art. 930(F) by virtue of the petitioner's having filed a Uniform Application."

*Id.* at *18-19, *quoting Hess v. Cain,* 2005 WL 1028558, *3 (E .D. La. 2005) (Berrigan, J.) (citation omitted); *see also Gilkers v. Cain*, 2006 WL 1985969, *2 ( E.D. La. 2006) (Duval, J.) (citation omitted) ("If the petitioner uses the state uniform application for post conviction relief...there is no need to comply with La.C.Crim.P., Art. 930.4(F)...").

In the instant matter, however, counsel, specifically, Kevin Boshea, Esq., filed, on petitioner's behalf, a post-conviction application with the state district court, and Mr. Boshea did **not** utilize the Uniform Application for Post Conviction Relief form. As such, the state

district court arguably was not relieved of its obligation to order petitioner, in accordance with Article 930.4(F), to explain why he did not raise his claim on appeal.

Based on the above, this court declines to find that petitioner's claim is procedurally barred.  For the following reasons, however, the court finds petitioner's claim to be without merit.

In support of his assertion that the State acted illegally in re-amending his indictment to charge him with second degree murder, petitioner relies on state law, specifically, "Article 305 (A) of the Louisiana Children's Code [which] authorizes the transfer of a juvenile to the adult court for prosecution upon the indictment of certain offenses (including second degree murder)."  (Rec. doc. 12-1, p. 6).[13]  Once such a transfer takes place, under Article 305(D), "[t]he court exercising criminal jurisdiction shall retain jurisdiction over the child's case, even though he pleads guilty to or is convicted of **a lesser included offense**."  (Rec. doc. 12-1, pp. 6-7 (emphasis original)).  Petitioner contends that because attempted armed robbery, the charge to which petitioner pled guilty, is not a lesser included offense of second degree murder, under the provisions of Article 305(D), the court exercising criminal jurisdiction over him, i.e. the Twenty-Fourth Judicial District Court, did not retain jurisdiction over him and, as such, the State was without authority to re-amend his indictment to again charge him

---

[13]As reflected in his January 24, 2002 guilty plea (State rec., vol. 8 of 14, p. 56), petitioner's date of birth is November 4, 1984, and he committed the pertinent offense on September 14, 2001. Thus, at the time he committed the offense, petitioner was 16 years old.

with second degree murder.  Instead, under the provisions of Article 305 (A), a new indictment was required to once again place him under the jurisdiction of the Twenty-Fourth Judicial District Court.

It is well established that federal habeas review is limited to questions of constitutional dimension.  *See generally Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Castillo v. Johnson*, 141 F.3d 218, 222 and 224 (5th Cir.), *cert. denied*, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).  Absent a due process violation, the fact that state law, specifically, La.Ch.C. arts. 305(A) and 305(D), may have been violated by virtue of the fact that the State re-amended petitioner's original indictment to once again charge him with second degree murder rather than convening a new grand jury for the purpose of attaining a new indictment charging petitioner with second degree murder, is of no moment for purposes of attaining federal habeas corpus relief.  Accordingly, the instant claim for habeas corpus relief is without merit.

### Claim 3) Denied Effective Assistance of Counsel

Petitioner raises several allegations in support of his claim that he received ineffective assistance of counsel.  First, petitioner asserts that by failing to object to the other crimes evidence that was attached to the warrant and unwittingly allowing such evidence to be presented to the jury, his trial counsel was unconstitutionally ineffective.

In squarely addressing this issue on direct appeal, the Louisiana Fifth Circuit Court

of Appeal first set forth the applicable law.

Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. *State v. McDonald,* 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, *writ denied,* 04-3088 (La.4/1/05), 897 So.2d 599. To establish a claim for ineffective assistance of counsel, a defendant must demonstrate (1) that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that his counsel's errors or omissions resulted in prejudice so great as to undermine confidence in the outcome. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. LaCaze,* 99-0584 (La.1/25/02), 824 So.2d 1063, 1078, *cert. denied,* 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). To show prejudice, the defendant must demonstrate that, but for his counsel's unprofessional conduct, the outcome of the trial would have been different. *Strickland v. Washington, supra.* An error is prejudicial if it was so serious as to deprive the defendant of a fair trial or a trial with a reliable result. *Id.; State v. Washington,* 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983.

The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight. *State v. LaCaze, supra* at 1078-1079. When assessing ineffective assistance claims, because there is no precise definition of reasonably effective assistance of counsel, these claims are assessed on the facts of the particular case as seen from the counsel's perspective at the time. *Id.* As a result, there is a strong presumption that the conduct of counsel will fall within the wide range of reasonable professional assistance. *State v. LaCaze, supra* at 1079.

Rather than on direct appeal, a claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. *State v. Washington, supra* at 983. However, when the record contains sufficient evidence to rule on the claim's merits and the issue is properly raised on appeal by assignment of error, it may be addressed in the interest of judicial economy. *State v. McDonald, supra* at 1042. In the present case, we find that the record is sufficient to rule on the merits of defendant's claim.

In *State v. Williams,* 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62,

74, *writ denied,* 99-1077 (La.9/24/99), 747 So.2d 1118, the defendant argued he was denied effective assistance of counsel based on the introduction of inadmissible hearsay evidence and other crimes evidence without objection. After deciding that counsel's failure to object did not constitute deficient performance under the first prong of the *Strickland* test, this Court noted that, moreover, wrongful admission of other crimes evidence is subject to the harmless error analysis. *Id.* at 76-77. This Court decided in light of the other evidence presented, even if the testimony constituted other crimes evidence or hearsay, such admission was harmless and trial counsel was not ineffective for his failure to object. *Id.*

*Stirgus,* 917 So.2d at 565-566.

Thereafter, the Louisiana Fifth Circuit reasoned:

In the instant case, even if we find that counsel's failure to object to the admission of other crimes evidence constituted deficient performance, the record does not show that but for the failure to object to this evidence, the outcome of defendant's trial would have been different. Rather, we find that trial counsel's failure to object to the other crimes evidence was harmless. The State presented two witnesses, Brandon and Shirley, who testified that defendant was at the apartment at the time the victim was killed. Both positively identified defendant and claimed they knew him prior to the incident from the neighborhood. Further, both heard statements which amounted to evidence of a burglary or robbery. Moreover, in a statement to police, defendant himself admitted that he knew of the plan to rob the victim and chose to go to the apartment that night with two others he knew were armed.

Defendant's guilty verdict was surely unattributable to any error by defense counsel in failing to object to the admission of the other crimes evidence. Therefore, defendant has failed to demonstrate that he was prejudiced by counsel's failure to object and thus, he has not proven his claim of ineffective assistance of counsel.

*Stirgus*, 917 So.2d at 566.

This court finds that the above reasoning does not represent an unreasonable

application of *Strickland* to the facts of this case.  Accordingly, petitioner's claim, that he is entitled to habeas relief by virtue of counsel failing to object to the other crimes evidence and allowing such evidence to be presented to the jury, is without merit.

Next, petitioner argues that counsel was ineffective due to counsel's failure to file a motion to suppress his confession.  According to petitioner, his "inculpatory statements were the result of police brutality as he was beaten with a telephone book and his testicles were repeatedly grabbed by the detectives to force him to confess."  (Rec. doc. 12-1, pp. 8-9).  Petitioner contends that "had his trial counsel properly pursued the motion to suppress the confession in this matter,[14] the motion would have been granted."  (Rec. doc. 12-1, p. 9; footnote added).

A review of the trial transcript reflects that petitioner informed jurors, in detail, with regard to the abuse he allegedly suffered at the hands of detectives, abuse which allegedly forced him to make a false confession.  On direct examination, petitioner relayed the following details regarding his interrogation at the hands of Jefferson Parish detectives:

> A.  [H]e said, "I know you [were] there," you know.  "I got all the statements, you know, from the witnesses right here.  And I know you [were] there."  And I was like, "No.  No, I wasn't there."

> Q.  Alright.  And how long did that go on?

> A.  That went on for awhile, you know, because he was like, "I can help you.

---

[14]A review of the record reflects that counsel filed a motion to suppress petitioner's statements.  *See* State rec., vol. 8 of 14, p. 101.

I know you [were] there, but I know you weren't the shooter.  I [know] you were in the room with Shirley.  You gave her a towel," and you know, this and that, this and that, you know.  And I kept denying it, you know.  And then, you know, he hit me across my head with the phone book.  You know, and he kept hitting me.  You know, he started grabbing my testicles, you know.  And sooner or later, you know, everything they [were] telling me to say on the tape, you know, I just started giving in.  Alright, you know, that was the only way I could stop getting beaten, stop getting hurt.  Yes, I'm going to tell you this.

(State rec., vol. 10 of 14, p. 663).

Thereafter, petitioner was able to provide jurors with his version of events.

Q.  Were you present on the night that this homicide occurred?

A.  Was I present?  No, sir.

Q.  Were you ever in that house?

A.  No, sir.

Q.  Did you hand Shirley a towel?

A.  No, sir.

Q.  Did you have a gun?

A.  No, sir.

Q.  Were you involved in any way?

A.  No, sir.  I was by my friend's Mike [sic] house in Madison Square.

(State rec., vol. 10 of 14, pp. 668-669).

By virtue of its guilty verdict, the jury clearly did not believe petitioner's version of events given the overwhelming contradictory evidence.  Specifically, as set forth in the above

22

factual recitation, two eyewitnesses, Shirley Johnson and Brandon Harris, positively identified petitioner as one of the perpetrators.  Shirley Johnson knew petitioner prior to the incident and told police of petitioner's involvement when they arrived on the scene.  Shortly thereafter, she identified petitioner in a photographic lineup.  The other eyewitness, Brandon Harris, likewise identified petitioner, initially based upon a tattoo on petitioner's arm.  He later identified petitioner in a photographic lineup and testified at trial that he was sure petitioner was the person he had seen in the apartment on the night at issue.

Based upon the above, the court finds that petitioner has failed to satisfy *Strickland's* prejudice prong.  Even if petitioner's confession had been suppressed, it is not reasonably probable, given the strong eyewitness testimony, that the result of the proceeding would have been different.

Finally, petitioner argues that counsel was ineffective due to his failure to "track down Mike", the person who petitioner was allegedly with at the time of the incident at issue.  Petitioner states that he notified counsel of his alibi witness but counsel "made no efforts to locate this vital witness, and therefore [his] alibi defense at trial was significantly inhibited." (Rec. doc. 12-1, p. 9).

The alleged failure of counsel to call witnesses is not *per se* prejudicial to the point of warranting habeas relief.  *See Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("complaints of uncalled witnesses are not favored, [in federal habeas review] because the presentation of testimonial evidence is a matter of trial strategy and because allegations

of what a witness would have testified are largely speculative").  In *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985), the Fifth Circuit noted that for a petitioner to show prejudice under *Strickland*, he must show that the testimony of an uncalled witness would have been favorable and that the witness would have testified at trial.  Petitioner must show a reasonable probability that the uncalled witness would have made a difference in the result. *Alexander*, 775 F.2d at 603.  There is a strong presumption that the failure of petitioner's counsel to call witnesses is a strategic choice.  *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66 (1984).

In this case, petitioner provides no insight into how counsel could have "tracked down Mike" when petitioner did not provide a last name for Mike and failed to set forth a valid address.  Clearly, petitioner has failed to satisfy his burden of showing how counsel was deficient in failing to "track down" his alleged alibi witness.  Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Stanley Stirgus, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  28 U.S.C. §636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996)(*en banc*).[15]

New Orleans, Louisiana, this __13th__ day of ____January_____, 2011.

_____
LOUIS MOORE, JR.
United States Magistrate Judge

_____

[15]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.